**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

| | | |
|---|---|---|
| **United States of America,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 3:24-cr-35-TES-CHW** |
| **Karol Tellez Duarte,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>DEFENDANT KAROL DUARTE'S</u>**
**<u>MOTION TO DISMISS BANK FRAUD COUNTS</u>**

The Government has attempted to convert a larceny ring that is no more than a sophisticated "smash and grab" into a complex white-collar crime. But the indictment fails to appreciate the difference between bank theft and bank fraud. While both involve the intent to take money unlawfully from a bank, fraud requires something more than mere theft—the government must prove that the defendants used false statements or misrepresentations to induce the bank to part with its money. Because the indictment fails to allege that Defendant Karol Tellez Duarte engaged in a scheme to steal by means of false or fraudulent representations or by otherwise defrauding a financial institution, Counts One and Two must be dismissed.

## FACTUAL ALLEGATIONS

The Government alleges that, between July 20, 2024 and November 2, 2024, Ms. Duarte and her codefendants conspired to commit bank fraud, meaning they "agreed to knowingly execute and attempt to execute a scheme and artifice to defraud and to obtain the money, funds and other property owned by, and under the custody and control of financial institutions insured by the Federal Deposit Insurance Corporation, by means of false and fraudulent pretenses, representations, and promises." (Dkt. 1 at 1.)

As to the manner and means of the conspiracy, the Government alleges that the object of the conspiracy was to "fraudulently obtain" money from automated teller machines ("ATM's") up and down the Eastern Seaboard. (*Id.*) The fraud took the form of what the Government calls a "jackpotting scheme," virtually converting the ATM into slot machine that dispenses cash on demand. (*See id.* ¶ 1.) The Government characterizes the scheme as "malware attacks," but what the Government describes is not a traditional cybercrime. (*See id.*) Instead, the defendants would use a physical key to take the cover off the ATM machine, attach a physical "foreign device" that would upload the malware to the ATM, and then activate the malware. (*Id.* at ¶ 2.) Once activated, the malware "would cause the ATM to dispense United States currency without linking the withdrawals to a

valid currency account." (*Id.*) In other words, the malware forced the machine to spit out money like a jackpot. No false or fraudulent pretenses, representations, or promises are alleged. Indeed, that is the extent of the so-called "fraud."

**ARGUMENT**

The law recognizes a difference between intending to steal and intending to defraud. There is no dispute at this stage that the indictment properly alleges that the conspirators took money from a bank illegally—the question is whether they did so through *fraud.* But the federal bank fraud statute makes criminal the knowing execution, or attempted execution of a "scheme or artifice -- (1) to defraud a financial institution, or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses." 18 U.S.C. § 1344; *see also United States v. De la Mata*, 266 F.3d 1275, 1287 (11th Cir. 2001). The indictment is not clear on whether the government is proceeding under the "defraud" clause or under the "false or fraudulent pretenses" clause, but the alleged facts do not support a conviction for bank fraud under either clause.

To prove that the alleged conspiracy was bank fraud under the defraud clause of Section 1344(1), the government must show that the facts show "a scheme to defraud rather than to do something other than defraud." *United States v. Takhalov*, 827 F.3d 1307, 1312 (11th Cir. 2016). To defraud a victim, "one must

intend to use deception to cause some injury." *Id.* And the word "deception" involves "'[t]he act of deliberately causing someone to believe something that is not true when the actor knows it to be false.'" *Id.* (quoting *Black's Law Dict.* at 492 (10th ed. 2014) (alteration in original); *see also id.* (the word "deception" involves "'the act of deceiving, cheating, hoodwinking, misleading, or deluding'" (quoting *Webster's Third New Int'l Dict.* At 585 (2002)).

To commit bank fraud under the "false or fraudulent pretenses" clause of Section 1344(2), the "goal" of the scheme must be to obtain money from a bank, and the "means" of the scheme must involve the use "false or fraudulent pretenses, representations, or promises." *See Loughrin v. United States*, 573 U.S. 351, 355-56 (2014). The Supreme Court has made clear that this clause involves the making of a false statement, which statement is the "action, instrument, or method" through which the money is obtained. *See id.* at 362-63; *see also United States v. Rivera*, 2010 WL 114881, No. CR 209-014, * (S.D. Ga. Jan. 12, 2010) (a conviction will only lie under the second clause of the bank fraud statute "if the defendant employes one of the means of deception set forth in the statute"). This element is typically satisfied when the statement "induc[es] a bank (or custodian of bank property) to part with money in its control," such as when someone attempts to cash a forged or altered check. *See Loughrin*, 573 U.S. at 363.

But under either theory, the heart of the scheme involves some lie, statement, or misrepresentation. *See Takhalov*, 827 F.3d at 1313-14; *see also* 11th Cir. Pattern Jury Instr., O52 (Apr. 2024 ed.) (defining "scheme to defraud" as including "any plan or course of action intended to deceive or cheat someone out of money or property by using false or fraudulent pretenses, representations, or promises relating to a material fact"). Further, that lie must be material, meaning that it "has a natural tendency to influence, or is capable of influencing, the decision of the decision making body to which it was addressed." *United States v. Gregg*, 179 F.3d 1312, 1314-15 (11th Cir. 1999) (quotation marks omitted) (cleaned up); *see also United States v. Maxwell*, 579 F.3d 1282, 1289 (11th Cir. 2009) ("A scheme to defraud requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property.")). Further, the statement must have been intended to induce reliance and capable of doing so. *See Gregg*¸ 179 F.3d at 1315.

The indictment fails to allege that Ms. Duarte or any of her co-conspirators made any kind of statement or representation—nor could they have through the "jackpotting" scheme alleged. Undersigned counsel searched all federal courts to find a case with facts even remotely close to this one, where a defendant is alleged to have stolen money from a bank but where there is no statement or misrepresentation involved. This appears to be the first bank fraud case of its

kind—not just involving a “jackpotting” scheme but lacking a false or fraudulent statement representation entirely.

The indictment does not, for example, allege that whatever device was planted on the ATM machines somehow communicated something false or fraudulent to the bank, and that such communication induced the bank to part with its money. Compare this case with ATM “skimming” schemes, where a device is fitted over the slot in an ATM machine and a hidden camera is nearby, allowing the device to capture the data on the card and the camera to record the customer’s PIN number. *See, e.g.*, *United States v. Pascu*, 2012 WL 2449905, No. 11-10199-DPW, *1 (D. Mass. June 26, 2012). Fraudsters using this skimming method then duplicate a cloned debit card that, in combination with the stolen PIN, allows the fraudster to communicate information about the victim’s specific account and allows the fraudster access to funds in that specific account. *See id.* The device itself is not the false or fraudulent misrepresentation, it is what the fraudster later does with information obtained from the device and the communications made to the bank later that constitute the fraud. Here, the government concedes that the funds stolen were not even tied to specific customers’ accounts. The “foreign device” the defendants attached to the ATM machines caused the machines to spit out money without linking it to any specific account. (*See* Dkt. 1 ¶ 2.)

The government has no doubt alleged a scheme to steal money from financial institutions, and Ms. Duarte does not challenge whether the indictment sufficiently alleges bank larceny as outlined in Count 3. But because the indictment fails to allege that the larceny scheme amounts to fraud, Counts 1 and 2 are due to be dismissed.

Respectfully submitted this 30th day of March, 2025.

By: /s/ ***Lynsey M. Barron***

Lynsey M. Barron,
Ga. Bar No. 661005
BARRON LAW, LLC
1800 Peachtree St. NE, Suite 300
Atlanta, Georgia 30309
Telephone (404) 276-3261
Email: lynsey@barron.law

***Attorney for Karol Tellez Duarte***

## CERTIFICATE OF SERVICE

I hereby certify that on the below date I electronically filed the foregoing Motion to Dismiss using CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

This 30th day of March, 2025.

/s/***Lynsey M. Barron***
By: Lynsey M. Barron
Ga. Bar No. 661005

***Attorney for Karol Tellez Duarte***