**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

For the Eleventh Circuit

---

No. 25-13489

Non-Argument Calendar

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

KAROL TELLEZ DUARTE,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 3:24-cr-00035-TES-CHW-2

---

Before JILL PRYOR, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Karol Duarte appeals her sentence of 57 months for conspiracy to commit bank fraud. On appeal, Duarte first argues that the

district court violated her due process rights by purportedly applying a sentencing enhancement under U.S.S.G. § 2B1.1(b)(11)(B) when the presentence investigation report ("PSI") only gave her notice that she would receive a two-level enhancement under § 2B1.1(b)(11)(A)(i) for the use or possession of "device-making equipment," and she contends further that the enhancement did not apply to her offense conduct. Second, Duarte argues that her sentence was procedurally unreasonable because the court misapplied the device-making equipment enhancement, and was substantively unreasonable because the court gave undue weight to the Venezuelan nationality of a co-conspirator who received funds from the conspiracy, the total loss amount, and the identity of the victim financial institutions, and did not appropriately consider her arguments regarding her minor role in the offense and the punishment she already has suffered.

## I. DISCUSSION

### *A. Guidelines Enhancement without Notice*

We review the application of the Sentencing Guidelines de novo and findings of fact for clear error. *United States v. Louis*, 559 F.3d 1220, 1224 (11th Cir. 2009). In order to be clearly erroneous, the finding of the district court must leave us with a "definite and firm conviction that a mistake has been committed." *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010). To preserve an error on appeal, the appellant must raise an objection that is sufficient to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought.

*United States v. Straub*, 508 F.3d 1003, 1011 (11th Cir. 2007) (citation omitted). An appellant may not raise an issue for the first time in a reply brief, and such arguments are considered abandoned. *United States v. Magluta*, 418 F.3d 1166, 1185-86 (11th Cir. 2005).

The due process rights of criminal defendants entitle them to adequate notice of, and opportunity to contest, the facts used to support their criminal penalty. *United States v. Jules*, 595 F.3d 1239, 1243 (11th Cir. 2010). The defendant's primary due process interest is "the right not to be sentenced on the basis of invalid premises or inaccurate information." *United States v. Plasencia*, 886 F.3d 1336, 1343 (11th Cir. 2018) (citation omitted). Thus, the degree of due process required in a sentencing hearing is "only that which is necessary to ensure that the district court is sufficiently informed to enable it to exercise its sentencing discretion in an enlightened manner." *Id.* (quotation marks and citation omitted).

While the PSI must identify all applicable Guidelines and factors relevant to the appropriate sentence, the district court is not bound by those facts and recommendations set forth in the PSI. Fed. R. Crim. P. 32(d)(1)(A); *Plasencia*, 886 F.3d at 1343. The court may apply a guidelines enhancement, even if it was not identified in the PSI, so long as the defendant has proper notice. *Plasencia*, 886 F.3d at 1343. A defendant has proper notice where the circumstances indicate that they have engaged in conduct that may result in application of an enhancement. *Id.* at 1344 (holding that, where the defendant heard testimony that was contradicted by the record, the defendant was on notice that the government might rely on his

own inaction as a basis to apply an obstruction of justice enhancement for the witnesses' false testimony, such that he could not claim inadequate notice by the court's sua sponte application of the enhancement).

Under § 2B1.1(b)(11)(A)(i), a two-level enhancement applies if the offense involved possession or use of any "device-making equipment." U.S.S.G. § 2B1.1(b)(11)(A)(i). Application Note 10(A) explains that "device making equipment" "(i) has the meaning given that term in 18 U.S.C. § 1029(e)(6); and (ii) includes (I) any hardware or software that has been configured as described in 18 U.S.C. § 1029(a)(9); and (II) a scanning receiver referred to in 18 U.S.C. § 1029(e)(8). 'Scanning receiver' has the meaning given that term in 18 U.S.C. § 1029(e)(8)." *Id.*, comment. (n.10(A)).

"Device-making equipment" is defined in § 1029(e)(6) as "any equipment, mechanism, or impression designed or primarily used for making an access device or counterfeit access device." 18 U.S.C. § 1029(e)(6). The hardware or software referenced in § 1029(a)(9) is that which has been "configured to insert or modify telecommunication identifying information associated with or contained in a telecommunications instrument so that such instrument may be used to obtain telecommunications service without authorization." *Id.* § 1029(a)(9). A "scanning receiver" referenced in § 1029(a)(8) is defined as "a device or apparatus that can be used to intercept a wire or electronic communication in violation of chapter 119 or to intercept an electronic serial number, mobile identifi-

cation number, or other identifier of any telecommunications service, equipment, or instrument." *Id.* § 1029(a)(8), (e)(8). Chapter 119 refers to Wire and Electronic Communications Interception and Interception or Oral Communications, codified at 18 U.S.C. §§ 2510 to 2523, which prohibits the use of any device to acquire any wire, electronic, or oral communications, except as authorized. 18 U.S.C. § 2511(1)(a); see also id. § 2510 (1), (4) (defining the terms "wire communication" and "intercept").

Here, the court did not violate Duarte's due process rights because the court applied the "device-making equipment" enhancement under § 2B1.1(b)(11)(A)(i), for which Duarte had notice under the PSI. As a preliminary matter, Duarte is factually incorrect that the court had applied the enhancement under § 2B1.1(b)(11)(B), as the government had alternatively proposed at sentencing. The court expressly stated that it was applying the enhancement because the device qualified as a "scanning receiver," which is within Application Note 10(A)'s definition of "device making equipment" as used in § 2B1.1(b)(11)(A)(i), for which she had actual notice. U.S.S.G. § 2B1.1, comment. (n.10(A)). Duarte only raised her challenge to the adequacy of the notice regarding the court's application of the specific "scanning receiver" definition of "device-making equipment" for the first time in her reply brief, so her improper-notice argument as to the court's actual chosen legal basis for the enhancement has been abandoned on appeal. *See Magluta*, 418 F.3d at 1185-86. Regardless, her inadequate-notice argument is meritless, as the PSI explicitly referenced the definition of "device-making equipment" in Application Note 10(A), as that

term is used in § 2B1.1(b)(11)(A)(i), putting Duarte on sufficient notice that any of the relevant definitions may be used.

In any event, even if Duarte did sufficiently preserve the issue for appeal, the court did not commit clear error by finding that Agent Winn's testimony supported application of the enhancement. *See, e.g., Louis*, 559 F.3d at 1224; *Magluta*, 418 F.3d at 1185-86. Duarte argues that, even if she accepts that the Raspberry Pi satisfies the definition of device-making equipment, the enhancement cannot apply because the device did not "obtain" the use of "telecommunications service[s]." Duarte's argument ignores that the Application Note 10(A) definition of "device making equipment" is not limited to the definition used in § 1029(a)(9) and includes the "scanning receiver" definition in § 1029(e)(8). *See, e.g.*, 18 U.S.C. § 1029(e)(8); U.S.S.G. § 2B1.1, comment. (n.10(A)). That definition is not limited to telecommunications services and includes the interception of wired and electronic communications in violation of chapter 119, Wire and Electronic Communications Interception and Interception of Oral Communication. *See* 18 U.S.C. § 1029(e)(8). The court found that Agent Winn's testimony regarding how the Raspberry Pi device was used to intercept communications between the bank's server and the ATM satisfied the "scanning receiver" definition. It was not clear error for the court to accept Agent Winn's explanation of how the Raspberry Pi device functioned as a basis for its application of the enhancement. The use of the Raspberry Pi device to intercept communications made between the bank's server and the ATM through the network cable

clearly satisfies the definition of intercepting wired communications because the device was used to acquire and interfere with the denial messages sent by the bank's server to the ATM. 18 U.S.C. § 2510(1), (4).

Because the district court applied a definition of "device-making equipment" under Application Note 10(A), for which Duarte received explicit notice in the PSI, the enhancement was properly applied. The district court did not err by applying the enhancement under the definition of a "scanning receiver" because there was evidence that the Raspberry Pi device intercepted wire communications between the bank's server and the ATM. 18 U.S.C. § 1029(e)(8); U.S.S.G. § 2B1.1, comment. (n.10(A)). Therefore, this Court affirms as to this issue.

*B. Substantive reasonableness of the Sentence*

We review the reasonableness of a sentence under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). After confirming that there were no procedural errors in imposing the sentence, we determine whether the sentence was substantively reasonable. *Id*. It is the appellant's burden to show the sentence is unreasonable in light of the record and the 18 U.S.C. § 3553(a) factors. *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (citing *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005)). The district court abuses its discretion when it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the

proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (citation omitted). We will only overturn a sentence as substantively unreasonable if "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Id.* at 1190 (quoting *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008)).

The proper sentencing factors are set out in § 3553(a) and include the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to afford adequate deterrence and to protect the public from further crimes by the defendant; and the advisory guideline range. 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(C), (a)(4). The district court need not directly discuss or state each factor; it is sufficient to acknowledge that the defendant's argument and the § 3553(a) factors have been considered. *Gonzalez*, 550 F.3d at 1324. We have also underscored that we must give due deference to the district court to consider and weigh the proper sentencing factors. *United States v. Shabazz*, 887 F.3d 1204, 1224 (11th Cir. 2018). Additionally, a sentence imposed well below the statutory maximum is an indication of the sentence's reasonableness. *United States v. Holt*, 777 F.3d 1234, 1269 (11th Cir. 2015).

Whether a factor considered by the district court in sentencing is impermissible is a question of law that is reviewed de novo. *United States v. Velasquez*, 524 F.3d 1248, 1252 (11th Cir. 2008). Although we have not discussed what an "impermissible factor" may be for purposes of § 3553(a), we have held that factors such as race, sex, national origin, creed, religion, and socio-economic status cannot be used to depart from the applicable Guideline range. *United States v. Davis*, 204 F.3d 1064, 1066 (11th Cir. 1999).

Here, the court considered the fact that funds from the conspiracy were sent to a known criminal in Venezuela, and speculated as to how those funds might have been used. While it presumably would be impermissible for the court to consider Duarte's own nationality, in and of itself, in weighing the § 3553(a) factors, *see generally Davis*, 204 F.3d at 1066, the court's comments about what happened to the stolen funds implicated legitimate sentencing considerations, such as the amount of money involved, the communities harmed by the thefts, and that Duarte had overstayed her visa while committing this offense. 18 U.S.C. 3553(a)(1). Rather than being an impermissible factor, the court's consideration of where proceeds from the conspiracy were sent, and what the impact of those funds may have been, went to the "nature and circumstances of the offense," as well as to Duarte's history and characteristics. *See* 18 U.S.C. § 3553(a)(1). While Duarte may disagree with the court considering that stolen money was sent to a co-conspirator in Venezuela, the court's consideration of those facts of the offense, and the circumstances of her own participation in it, was not improper. *See Shabazz*, 887 F.3d at 1224.

It was also proper for the court to consider the total loss and number of thefts involved in this offense. Again, the total amount of funds taken during commission of the conspiracy, and the small, community nature of the financial institutions from which those funds were taken, informed the nature and circumstances of the offense. *See* 18 U.S.C. § 3553(a)(1). This Court gives great discretion to the weight placed on each factor by the district court, and here the district court determined that the 57-month sentence was appropriate in part due to the more than $1.4 million stolen from small credit unions and banks. *See Shabazz*, 887 F.3d at 1224. That weighing does not rise to a "clear error of judgment," so this Court will not find the sentence substantively unreasonable. *See Irey*, 612 F.3d at 1190.

The court also made clear that it had considered the mitigating circumstances raised by Duarte. The court addressed Duarte's immigration status by noting that she had overstayed her visa and had used that time to commit this offense. As to Duarte's lack of criminal history, the allegation that she was "lured" into the scheme by Villamizar, and the punishment she suffered by being in custody during her son's funeral, the court stated that it had considered the arguments raised in the sentencing memorandum and found those arguments unpersuasive. The court was not required to address each of Duarte's arguments individually, so long as it considered those arguments. *See Gonzalez*, 550 F.3d at 1324. Additionally, the 57-month sentence imposed was well below the stat-

utory maximum of 30 years, an indication of its substantive reasonableness. *See Holt*, 777 F.3d at 1269. Therefore, we affirm the reasonableness of the sentence.

For the foregoing reasons, the decision of the district court is

**AFFIRMED.**